UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| VINCENT E. LEWIS, | ) | Civil Action No.: 1:04-cv-21959-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **FINDINGS OF FACT** |
| | ) | **CONCLUSIONS OF LAW** |
| BRIDGESTONE-FIRESTONE NORTH | ) | |
| AMERICA TIRE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court on Plaintiff's claim for Short Term Disability ("STD")

benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) and attorneys' fees pursuant to 29 U.S.C. §

1132(g).

**Procedural History**

This lawsuit was initially commenced on August 23, 2004. Plaintiff Vincent Lewis

("Lewis") asserted claims for breach of contract and bad faith refusal to pay STD benefits

against his former employer, Defendant Bridgestone/Firestone North American Tire, LLC

("Bridgestone"). On October 1, 2004, Bridgestone moved to dismiss Lewis' claims arguing

that they were preempted by the Employee Retirement Income Security Act ("ERISA"), 29

U.S.C. §§ 1001-1461.

A hearing was held on Bridgestone's motion to dismiss on January 26, 2005.

Bridgestone's motion was taken under advisement and Lewis was granted leave to file an

amended complaint substituting an ERISA claim. Lewis filed his amended complaint on

February 2, 2005 along with a motion to amend his amended complaint to add a wrongful

termination claim. On May 2, 2005, the court granted Lewis' motion to amend the amended

complaint.

Lewis' wrongful termination claim was subject to an Employee Dispute Resolution Plan and an arbitration agreement. The parties arbitrated Lewis' wrongful termination claim on January 19 and 20, 2006. Bridgestone prevailed in the arbitration and by consent order, the court dismissed Lewis' wrongful termination claim on August 4, 2006, thus leaving the ERISA claim for STD benefits.

The parties filed a Joint Stipulation on October 4, 2005. The parties agreed to the following stipulations: 1) all administrative remedies have been fully exhausted; 2) the standard of review is for abuse of discretion and no conflict of interest exists; 3) the documents provided in Exhibit 1 to the Joint Stipulation were the only documents that Bridgestone reviewed in making the STD benefits determination; 4) Exhibit 2 to the Joint Stipulation, which is the Bridgestone/Firestone Americas Holding, Inc. Short Term Disability Plan for Salaried Employees, is the governing Plan document; 5) the relevant provisions of the Plan consist of Section II(B) - Accident and Sickness Weekly Benefits for Eligible Employees, Section II(D) - Eligibility for Other Benefits, Section III(B)(2) - Additional Offset, and Section V(G) - Examination and Application review; 6) the substantive issue is whether Bridgestone abused its discretion in denying Lewis STD benefits after Lewis represented to Bridgestone that his disability resulted from a workplace injury; 7) the court may dispose of this matter based upon the administrative record and the memoranda in support of judgment.[1]

_____

[1] The Fourth Circuit has recognized that there is no prohibition against the parties agreeing to do away with the summary judgment standard and simply allowing the court to dispose of a matter on its' merits by way of stipulation. *See Bynum v. CIGNA HealthCare of North Carolina, Inc.*, 287 F.3d 305, 312 n.14 (4th Cir. 2002) (stating "[w]hile the parties' agreement to waive the summary judgment standards and submit their case to the district court on its merits seems to be unique, the ERISA statute does not preclude such an agreement).

The parties do not agree as to what should be included in the administrative record. Lewis contends that the documents contained in Exhibit 1A, which are Lewis' medical records, should be included in the administrative record and reviewed by the court. Bridgestone objects to the inclusion of Exhibit 1A in the administrative record because Exhibit 1A was not provided to or reviewed by Bridgestone in making the STD benefits determination.

Each party has filed memoranda in support of judgment. On November 11, 2005, Bridgestone filed a response to Lewis' memorandum in support of judgment.

The court has considered the parties' memoranda and the administrative record and, based upon these documents, makes the following findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure. To the extent that any findings of fact constitute conclusions of law, or vice versa, they shall be so regarded.

### Findings of Fact

1. Lewis was eligible to participate in the Bridgestone/Firestone Americas Holding, Inc. Short Disability Plan for Salaried Employees ("the Plan").

2. The parties have stipulated that the following Plan provisions are relevant in resolving this dispute:

> **Section II(B) - Accident and Sickness Weekly Benefits for Eligible Employees**
>
> Benefits will be paid while an eligible employee is absent from work because of a medically determinable disability arising from an accident or sickness that is not covered under a Workers' Compensation Act. An eligible employee will not be considered disabled if he is engaged in any occupation or activity for pay or profit, other than employment pre-approved by the Company as rehabilitative employment. Benefits will be paid only while the eligible employee is under the care of a (1) doctor licensed to

practice medicine, (2) doctor licensed to practice dental surgery, (3) licensed Doctor of Podiatry, or (4) licensed Chiropractor.  In the case of absences for mental health and substance abuse disorders, employees under the care of a credentialed and contracted provider through the Company's mental health and substance abuse benefits plan carrier, who may not be a doctor licensed to practice medicine, will be entitled to benefit payments under the Plan.  The Company shall at all times have the right to require an eligible employee who makes a claim for benefits to submit to an examination by a health care professional selected by the Company to determine whether the eligible employee is disabled.

. . .

**Section II(D) - Eligibility for Other Benefits**

Notwithstanding anything in the Plan to the contrary, benefits for an eligible employee will not be paid or payable for any period of time that the eligible employee is receiving or eligible to receive disability or retirement benefits under any other disability plan or retirement plan sponsored by the Company or is receiving or eligible to receive payments under any workers' compensation law or similar law.

**Section III(B)(2) - Offsets - Additional Offsets**

The amount of weekly benefits otherwise payable hereunder will be reduced by the following:

. . .

2.    any benefits or payments received or to which the eligible employee becomes entitled on account of sickness or injury arising under or by reason of any workers' compensation law, occupational disease law, or similar legislation, including but not limited to, amounts for partial or total disability, whether permanent or temporary.

**Section V(G) - Examination and Application Review**

The Plan Administrator at its own expense shall have the right and opportunity to examine, or have its agents examine, the eligible employee whose sickness or injury is the basis of a claim when and as often as it may reasonably require during the pendency of the claim or receipt of benefits under the Plan.  The Plan Administrator shall have the right to require the eligible employee

4

to provide all medical and financial records (at the expense of the eligible employee) as often as it may reasonably deem necessary during the pendency of the claim or receipt of benefits. The Plan Administrator shall have the right to require the eligible employee to execute such releases as it deems necessary to investigate any claim or right to receive or continue receiving benefits under the Plan and to require the eligible employee to submit any information deemed reasonably necessary to such investigation. Without in any manner limiting the foregoing, the Plan Administrator shall have the right to conduct medical, physical, and mental examinations of the eligible employee by doctors, other medical personnel, or vocational specialists of its choice and/or require that the eligible employee submit to functional capacity examinations or other similar examinations. Further, the Plan Administrator shall have the right to conduct such other examinations as it deems appropriate, such as examinations of the eligible employee's work history and records and/or tax or financial records. Upon request of the Plan Administrator, the eligible employee must truthfully answer any and all questions reasonably related to a determination of the eligible employee's eligibility for benefits under the Plan.

The Plan Administrator shall deny the claim of or terminate benefit payments to an eligible employee who fails or refuses to comply with the Plan Administrator's request to examine such eligible employee, to furnish any information, financial or medical records upon request, to furnish any information, financial or medical records required to be furnished by the Plan, to sign requested releases, to furnish other information requested by the Plan Administrator, or to cooperate with the person conducting any requested examination. (emphasis added).

3.    On March 23, 2003, Lewis claims to have suffered an on-the-job back injury at Bridgestone while operating a machine referred to as a "standup tugger."

4.    On May 21, 2003, Lewis completed an Accident/Sickness Status Report ("ASSR") complaining of "severe incapacitating migraine H/A [headaches] that render him non-functional, occurring 3-4 days/week." The ASSR contained a section where Lewis was to answer whether the sickness or injury was due in any way to his employment.

Lewis answered yes that his sickness or injury was related to his employment. In the section of the ASSR that requested Lewis to describe the details of the accident, including how, when and where the accident occurred, Lewis responded that "work related stress and harassment has continued to trigger migraine headaches." In response to the section that requested that Lewis give the job related medical reasons why patient is presently unable to perform his or her duties, Lewis' response was "severe pain (H/A) [headaches], neck pain, back pain, intermittent HTN [hypertension]." Lewis indicated that he submitted the ASSR seeking short term disability benefits from April 28, 2003 to the present.

5.    On May 29, 2003, Bridgestone Firestone South Carolina's Human Resources Leader, Steve Sucher, wrote Lewis in response to Lewis' ASSR. Sucher wrote:

> Your application for short-term disability was referred to me for
> review. The form includes the following question: "Is this sickness
> or injury due in any way to your employment?" Your response to
> the question is indicated with a check mark in the "yes" box.
>
> Your response disqualifies consideration for your request for short-
> term disability and makes this application a worker's compensation
> claim. I will refer your application to Safety/Security Service
> Leader Brent Stephens for review . . . He will contact you with a
> decision to accept or deny the claim.

6.    In a letter dated June 9, 2003, Lewis wrote to Bridgestone and stated in part:

> On March 23, 2003 I got injured operating the new stand-up
> tugger. I was placed on light/restricted duty. The light/restricted
> duty orders were violated constantly by my supervisor (Fred
> Brown). . . The more I tried to work with this pain; ultimately the
> migraine headache was brought on again. I tried to continue
> working, however the migraines became more severe and intense
> and my blood pressure eventually ended up in the danger zone.

7.    Lewis completed a second ASSR on June 20, 2003, complaining of severe incapacitating migraine headaches that render him nonfunctional that occur 3-4 days per week. Lewis indicated a second time that his sickness or injury was due to his employment. Lewis stated that "work related stress and harassment has continued to trigger migraine headaches. Migraines are more severe since back and neck injury on 3-23-03."

8.    Lewis completed a third ASSR on July 17, 2003, indicating a third time that his sickness or injury was due to his employment. Again, Lewis stated that "work related stress and harassment has continued to trigger migraine headaches." Lewis also stated that he was being treated by a neurologist for the migraine headaches and his family doctor for the hypertension. Lewis indicated that it was difficult to measure any improvement because Bridgestone continues to "harass me by doing everything they can to delay benefits that are payable to me."

9.    On July 18, 2003, Lewis' workers' compensation attorney, Stephen L. Hudson, Esq., wrote Sucher and took the position that Bridgestone's failure to adhere to the work restrictions placed on Lewis was the cause of his health problems.

10.    After receiving the third ASSR, Sucher again notified Lewis that he was ineligible for STD benefits because of Lewis' repeated assertion that his injury or sickness was due to his employment. "As stated in my previous letter to you, your response disqualifies consideration for your request for short-term disability and makes this application a worker's compensation claim. All worker's compensation claims are handled thru our Safety/Security Department."

11.  Sucher responded to Attorney Hudson's letter on July 29, 2003. Sucher indicated that he previously communicated to Hudson and Lewis that Lewis' assertion that his injury is work-related disqualifies him from consideration for short-term disability benefits. As a result, Sucher wrote, Lewis' application has been referred to Safety/Security Service Leader Brent Stephens for consideration as a worker's compensation claim.

12.  In an August 5, 2003, letter to the Bridgestone/Firestone South Carolina Plant Manager, Michael Rose, Lewis wrote that "[a]ccording to medical doctors it is difficult to control migraines or hypertension when you have a Human Resource leader that continues to create hardship and distress on an employee."

13.  On August 6, 2003, Brent Stephens notified Lewis of the process he would need to follow in order to properly submit a workers' compensation claim. Stephens attached a BFSC Safety Report form to the letter and informed Lewis that he must complete and return the form to begin the workers' compensation claims process.

14.  On August 14, 2003, Lewis completed another ASSR and for the first time indicated that his sickness or injury was not due to his employment.

15.  In response, Sucher wrote to Lewis noting the conflict with his previous ASSRs. Sucher stated in the letter that "[s]ince we work on a rotating shift schedule and the migraines occur on a periodic basis, it would seem probable that there should be days when you would be fully capable of performing your normal job duties." Sucher requested that, pursuant to Company guidelines, Lewis have his neurologist complete an ASSR for Lewis so that Bridgestone could adequately make a decision concerning the impact of Lewis' migraines on his ability to perform the essential functions of his job.

16.    Alana Williams, M.D., Lewis' family physician, wrote a letter to Sucher dated August

26, 2003, which stated that in her opinion Lewis has followed the policies and

procedures that would entitle him to receive STD benefits.  Dr. Williams indicated that

she was treating him for hypertension, neck and back pain, while the S.C. Neurological

Clinic was treating Lewis for the migraine headaches.

17.    Lewis completed another ASSR on September 8, 2003, which was similar to his August

14 ASSR.  Instead of having his neurologist complete the ASSR as Sucher requested,

Lewis attached a letter from his family doctor, Dr. Williams.

18.    After receiving the September 8 ASSR, Sucher wrote Lewis notifying him that because

he now has represented that his sickness was not related to his employment,

Bridgestone would consider the ASSR as a STD benefits application.  However, Sucher

noted that "[a]s of this date, we still have not received the required form completed by

a neurologist that would allow us to make an educated decision concerning the

qualification for short-term disability."

19.    Lewis filled out yet another ASSR on October 7, 2003.  In this ASSR, Lewis wrote

that he would let his "family doctors determine the cause of the medical conditions."

Lewis confusingly stated that "[h]er letter dated August 26, 2003 states the reason for

short-term disability, and what is clearly a work related injury."

20.    Sucher responded to Lewis' October 7 ASSR on October 13, 2003, in an attempt to

"clarify once and for all whether it [was Lewis'] intention to apply for STD benefits or

workers' compensation benefits."  Sucher wrote that "[i]t is our desire to handle this

application expeditiously, but we simply cannot do so without your cooperation and

9

clarification as to the nature of the claim."

21.  Lewis' new workers' compensation lawyer, Belinda Ellison, Esq., responded to Sucher's October 13 letter to Lewis. In an apparent attempt to clarify Lewis' intention to seek either STD benefits or workers' compensation benefits, Attorney Ellison wrote that "[i]t is unfortunate that [Lewis] is currently out of work related to his on the job injury. . . . My client's current absence from work is work related."

22.  Chronologically the last document in the administrative record is Lewis' final ASSR dated December 5, 2003, in which Lewis once again indicates that his injury or sickness was due to his employment.

## Conclusions of Law

### Standard of Review

The parties have stipulated that the standard of review governing the denial of benefits to Lewis is the abuse of discretion standard and that no conflict of interest exists. Under the abuse of discretion standard of review, an administrator's decision will not be disturbed by the court if the administrator's decision is reasonable. *Booth v. Wal-Mart Stores, Inc. Assocs. Health and Welfare Plan*, 201 F.3d 335, 342 (4th Cir. 2000). If the administrator's decision was reasonable, the court should not disturb such decision, even if the court would have independently come to a different conclusion. *Booth*, 201 F.3d at 344. In determining whether an administrator's decision is reasonable, the court may consider, but is not limited to, the following factors:

> 1) the language of the plan; 2) the purposes and goals of the plan;
>
> 3) the adequacy of the materials considered to make the decision

and the degree to which they support it; 4) whether the fiduciary's

interpretation was consistent with other provisions in the plan and

with earlier interpretations of the plan; 5) whether the

decisionmaking process was reasoned and principled; 6) whether

the decision was consistent with the procedural and substantive

requirements of ERISA; 7) any external standard relevant to the

exercise of discretion; and 8) the fiduciary's motives and any

conflict of interest it may have.

*Id*. at 342-43.

## Scope of Review

Since the appropriate standard of review, which was stipulated to by the parties, is an

abuse of discretion standard, this court's review is limited to the evidence that was before the

claims administrator at the time of the decision.[2]  *See Sheppard & Enoch Pratt Hosp., Inc. v.*

*Travelers Ins. Co.*, 32 F.3d 120, 125 (4th Cir. 1994) (holding that "when a district court

reviews a plan administrator's decision under a deferential standard, the district court is limited

to the evidence that was before the plan administrator at the time of the decision").

## Discussion

As the parties have stipulated, this matter involves only a claim for STD benefits

pursuant to 29 U.S.C. § 1132(a)(1)(B) and a claim for attorneys' fees pursuant to 29 U.S.C. §

---

[2] Lewis argues that this court should consider Exhibit 1A, which includes his medical records.  However, Exhibit 1A was not considered by the plan administrator when he made his decision to deny Lewis benefits. Lewis has not requested that this court remand the case to the plan administrator to consider Exhibit 1A, nor has he offered an explanation as to why he did not submit Exhibit 1A to the plan administrator.  Accordingly, the court will not review Exhibit 1A, Lewis' medical records, in determining whether the plan administrator abused his discretion in this case.

1132(g).

Under the abuse of discretion standard of review, a plan administrator's decision will not be disturbed if it is reasonable. *See Booth*, 201 F.3d at 342.  Based on the facts before the administrator at the time of his decision, the court finds that the administrator's decision was reasonable.

Lewis indicated in his first three ASSRs that his injury or sickness was due to his employment.  Sucher notified Lewis on several occasions that because he claimed that his injury or sickness was due to his employment that his ASSR could not be considered as an application of STD benefits, but would be considered a workers' compensation claim. Sucher's actions were consistent with the plain terms of the Plan, which stated that benefits would be paid "while an eligible employee is absent from work because of a medically determinable disability arising from an accident or sickness that is not covered under a Workers' Compensation Act."   Sucher's actions were also consistent with the ERISA provision that requires plan administrator's to defray reasonable administrative expenses in administering the plan. *See* 29 U.S.C. § 1104(a)(1)(A)(ii).

When Lewis completed a fourth ASSR, he indicated for the first time that his injury or sickness was not due to his employment.  In response, Sucher requested that Lewis have his neurologist provide information regarding his migraine headaches.  Sucher's request was permissible under the terms of the Plan, which provided that "[t]he Company shall at all times have the right to require an eligible employee who makes a claim for benefits to submit to an examination by a health care professional selected by the Company to determine whether the eligible employee is disabled."   Lewis, however, never provided the requested information in

violation of the Plan's requirement that the eligible employee cooperate and provide all information requested by the administrator. Under the terms of the Plan, the administrator could have denied Lewis STD benefits on that basis alone.

Following Lewis' October 7 ASSR, Sucher requested final clarification as to whether Lewis intended to seek STD benefits or workers' compensation benefits. In response to Sucher's request, Lewis' attorney stated unequivocally that "[m]y client's current absence from work is work related."

The administrative record indicates that the administrator's decision to deny Lewis STD benefits was reasoned and principled and consistent with the terms of the Plan. The court further finds that the materials contained in the administrative record were adequate to justify the plan administrator's decision. Lewis failed to cooperate or comply with the administrator's requests for additional medical information. The administrator's request was specifically permitted under the terms of the Plan. The administrator complied with the terms of ERISA and acted in accordance with his duties as a fiduciary to the Plan. *See* 29 U.S.C. § 1104(a)(1)(A) and (D). Considering Lewis' repeated assertions that his injury or sickness was due to his employment, the plain terms of the Plan, Attorney Ellison's final representation that Lewis' injuries were work related, and Lewis' failure to provide the administrator with the requested medical information from his neurologist, it was not an abuse of discretion for the administrator to deny Lewis STD benefits.

## Conclusion

For the reasons stated above, the court concludes that Bridgestone's decision to deny

Lewis STD benefits was reasonable and did not constitute an abuse of discretion.  Accordingly,

judgment is **GRANTED** in favor of Bridgestone.  Lewis' claim for benefits under 29 U.S.C. §

1132(a)(1)(B) and attorneys' fees under 29 U.S.C. § 1132(g) is **DENIED**.

**IT IS SO ORDERED**.


Florence, S.C.                                                      s/ R. Bryan Harwell
September 30, 2007                                          R. Bryan Harwell
                                                                         United States District Judge